Mr. Larry W. Walther, Director Arkansas Department of Economic Development One Capitol Mall Little Rock, Arkansas 72201
Dear Mr. Walther:
I am writing in response to your request for an opinion on whether Southland Greyhound Park's expansion, which you state "consist[s] of approximately one thousand (1,000) `electronic games of skill' along with a bar/lounge entertainment area, a 250 seat buffet and other food and beverage service offerings, and a 10,000 square foot conference facility" can be considered a "tourism attraction" for purposes of the state sales tax and income tax credits authorized at A.C.A. §§ 15-11-501
to-511 (Repl. 2003 and Supp. 2005). You express concern about this issue in light of A.C.A. § 15-11-503(13)(B)(vi) (Supp. 2005). Subsection (a) of that subsection defines a "tourism attraction" as excluding "[f]acilities established for the purpose of conducting legalized gambling." Subsection (b), of that same subsection states that: ". . . a facility regulated under the Arkansas Horse Racing Law, § 23-110-101 et seq., or the Arkansas Greyhound Racing Law, § 23-111-101 et seq., shall be a tourism attraction for purposes of this subchapter for any approved project as outlined in subdivision (13)(A) of this section or for an approved project relating to pari-mutuel racing at the facility and not for establishing a casino or for offering casino-style gambling. . . ." You state that "ADED's underlying concern is whether `electronic games of skill' are considered casino-style gambling. . . ." You therefore ask "whether the addition of the `electronic games of skill' at Southland Greyhound Park is or is not an eligible `tourism attraction' as defined in the Arkansas Tourism Development Act."
RESPONSE
Assuming that the facilities you describe are solely in connection with the offering of "electronic games of skill" and do not relate to pari-mutuel racing at the facility, in my opinion the answer to your question is in all likelihood that Southland Greyhound Park is not eligible for the tourism tax credits afforded by the applicable subchapter.[1] If the project is solely in connection with the offering of "electronic games of skill," and does not relate to "pari-mutuel racing," in my opinion the project does not fall within the first two clauses of A.C.A. § 15-11-503(13)(B)(vi)(b). As a consequence, it is not necessary to determine whether it would be considered a "casino" or "casino-style gambling" under the last clause in that subsection. That determination would in any event be one of fact outside the province of an official advisory Attorney General Opinion.
The subchapter about which you inquire is the "Arkansas Tourism Development Act" codified at A.C.A. §§ 15-11-501 to-511 (Repl. 2003 and Supp. 2005). It was originally adopted in 1997 (see Act 291 of 1997), and has been amended several times since its original adoption. The subchapter currently provides state sales tax and income tax "credits" which may be used to offset state sales tax and income tax liability for certain approved "tourism attraction" projects. The term "tourism attraction" is defined at A.C.A. § 15-11-503(13) and includes a broad array of attractions, including recreational or entertainment facilities, botanical gardens and theme parks. A.C.A. §15-11-503(13)(A). A number of attractions are specificallyexcluded from the definition, including certain lodging facilities and certain facilities devoted primarily to the sale of retail goods. A.C.A. § 15-11-503(13)(B). One of the specific exclusions from the definition of a "tourism attraction" is "[f]acilities established for the purpose of conducting legalized gambling." A.C.A. §15-11-503(13)(B)(vi)(a). The immediately succeeding subsection (13)(B)(vi)(b), qualifies this exclusion, however, by stating that:
 However, a facility regulated under the Arkansas Horse Racing Law, § 23-110-101 et seq., or the Arkansas Greyhound Racing Law, § 23-111-101 et seq., shall be a tourism attraction for purposes of this subchapter for any approved project as outlined in subdivision (13)(A) of this section or for an approved project relating to pari-mutuel racing at the facility and not for establishing a casino or for offering casino-style gambling. . . .
Id. (Emphasis added).[2]
This provision was adopted in 1997, as a part of Act 291 of 1997, and it is the relevant subsection that gives rise to your question. As can be seen from reading the language of subsection (a) of A.C.A. §15-11-503(13)(B)(vi) together with subsection (b) above, facilities established for the purpose of conducting legalized gambling are excluded from the definition of a "tourism attraction" except for: 1) facilities regulated under the specific subchapters mentioned above (for our purposes the Arkansas Greyhound Racing Law), or 2) an approved project "relating to pari-mutuel racing at the facility. . . ." The final qualification is that the project not relate to the establishing of "a casino or . . . casino-style gambling." In order to qualify as a tourism attraction under this definition, therefore, Southland's facility must be one regulated under the "Arkansas Greyhound Racing Law," or it must "relate to pari-mutuel racing at the facility" and not be for the purpose of establishing a casino or casino-style gambling.
The "electronic games of skill" you describe as a central element of Southland's expansion were authorized by virtue of Act 1151 of 2005. That Act is codified at A.C.A. §§ 23-113-101 to-604 (Supp. 2005) and is entitled the "Local Option Horse Racing and Greyhound Racing Electronic Games of Skill Act." It was of course adopted in 2005, several years after the original adoption of the Tourism Development Act in 1997.
In analyzing whether Southland's facility is eligible for the tax credits at issue, the pertinent inquiry is again, whether the new facility is one regulated under the Arkansas Greyhound racing law, or whether it relates to pari-mutuel racing at the facility. In this regard, you reference A.C.A. § 23-113-103(5)(B), a portion of "Local Option Horse Racing and Greyhound Racing Electronic Games of Skill Act," which states that:
 "Electronic games of skill" does not include pari-mutuel wagering on horse racing and greyhound racing governed by the Arkansas Horse Racing Law, § 23-110-101 et seq., or the Arkansas Greyhound Racing Law, § 23-111-101 et seq., whether pari-mutuel wagering on live racing, simulcast racing, or races conducted in the past and rebroadcast by electronic means. . . ."
This subsection indicates that the provisions of the "Local Option Horse Racing and Greyhound Racing Electronic Games of Skill Act" governing electronic games of skill, do not apply to the pari-mutuel racing or wagering conducted under the Arkansas Greyhound Racing Law. Another provision of the "Local Option Horse Racing and Greyhound Racing Electronic Games of Skill Act" restates this conclusion and also, in a separate subsection, indicates the converse proposition — that provisions of the Arkansas Greyhound Racing Law do not govern the "electronic games of skill" authorized by the 2005 Act. In this regard, A.C.A. § 23-113-603(a) and (b) provide as follows:
 (a)Pari-mutuel wagering on horse racing and greyhound racing, whether on live racing, simulcast racing, or races conducted in the past and rebroadcast by electronic means, shall continue to be governed by the Arkansas Horse Racing Law, § 23-110-101 et seq., and the Arkansas Greyhound Racing Law, § 23-111-101 et seq., respectively, and not by this chapter.
 (b)(1) Provisions of the Arkansas Horse Racing Law, § 23-110-101 et Seq., and the Arkansas Greyhound Racing Law, § 23-111-101 et seq., prohibiting wagering other than on horse or greyhound races and other than under the parimutuel or certificate method of wagering shall not apply to wagering on electronic games of skill conducted pursuant to this chapter, and to this end the provisions of §§ 23-110-405(d)(1) and (2), 23-111-508(b), 23-111-508(d)(1) and (2), 23-111-508(d)(4), and any other inconsistent provisions of the Arkansas Horse Racing Law, § 23-110-101 et seq., and the Arkansas Greyhound Racing Law, § 23-111-101 et seq., shall not apply to wagering on electronic games of skill conducted in accordance with this chapter.
 (2) Wagering under this chapter is not required to be pari-mutuel.
(Emphasis added).
In my opinion these statutes make clear that the "electronic games of skill" authorized under Act 1151 of 2005 are not "regulated under . . . the Arkansas Greyhound Racing Law" for purposes of the first clause of the proviso in A.C.A. § 15-11-503(13)(B)(vi)(b). Neither in my opinion, do "electronic games of skill" appear to "relat[e] to pari-mutuel racing at the facility" for purposes of the second clause in A.C.A. §15-11-503(13)(B)(vi)(b). The "electronic games of skill" do not necessarily involve "racing at the facility" and the wagering upon them is not required to be "pari-mutuel."
Therefore, if the facility at issue is solely in connection with "electronic games of skill" and does not relate to pari-mutuel racing at the facility, in my opinion the facility is not within the definition of a "tourism attraction" for purposes of the Arkansas Tourism Development Law.[3] Because the facility you mention does not, under these circumstances, come within the first two clauses of that definition (see A.C.A. § 15-11-503(13)(B)(vi)(b)), it is not necessary to also determine whether the conducting of "electronic games of skill" is outside the pertinent definition as constituting "a casino or casino-style gambling."
Deputy Attorney General Elana C. Wills prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE
Attorney General
MB:ECW/cyh
[1] I should note, however, that the applicable statutes grant you, as Director of the Arkansas Department of Economic Development, the power to grant or deny final approval of a project. That power has not been reposed in this office.
[2] The "Arkansas Tourism Development Act Rules and Regulations" echo this provision. See Rules at § II(L)(6).
[3] An issue of fact may exist as to whether any portion of the new expansion, such as the "bar/lounge entertainment area," buffet or conference facility "relate[s] to pari-mutuel racing at the facility." I am not empowered as a fact-finder in the issuance of Attorney General Opinions. My opinion is therefore based on the assumption that the entire expansion does not "relat[e] to pari-mutuel racing."